# IN THE COURT OF APPEALS OF IOWA

No. 19-1064
Filed August 21, 2019

**IN THE INTEREST OF L.C. and K.C,**
**Minor Children,**

**E.C., Mother,**
    Appellant,

**S.E., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Scott Strait, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to two children. **AFFIRMED ON BOTH APPEALS.**

Anne M. Rohling of Rohling Law, PLLC, Council Bluffs, for appellant mother.

Kyle J. McGinn of McGinn, Springer & Noethe, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Marti Nerenstone, Council Bluffs, guardian ad litem for minor children.

Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

This appeal affects two children: L.C., age one, and K.C., who is almost three. In June 2019, the juvenile court terminated their legal relationships with their parents, Emilee and Shawn. The court was most concerned about Shawn's acts of domestic violence against Emilee and Emilee's dishonesty about maintaining their toxic relationship. Both parents separately appeal. Emilee contends the State failed to prove a statutory ground for termination. Shawn concedes the State met its burden in his case but asks for "more time to get his life in order." In its termination order, the juvenile court found L.C. and K.C. could not be safely reunited with either parent now or "in the foreseeable future." After independently reviewing the record,[1] we arrive at the same conclusion.

Shawn's physical abuse of Emilee drew the attention of the Iowa Department of Human Services (DHS) in June 2017. Police arrested Shawn for assaulting Emilee in a motel room while eight-month-old K.C. sat nearby on the bed. The violence prompted the juvenile court to issue a temporary removal order placing K.C. in the care of an aunt. That order directed Shawn to complete the Iowa Domestic Abuse Program (IDAP). Despite a criminal no-contact order, Shawn continued to interact with Emilee. In November 2017, Shawn again assaulted Emilee, knocking her unconscious.

---

[1] We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). While not bound by the juvenile court's fact findings, we give them weight, particularly on credibility issues. *Id.* The State must present clear and convincing evidence to support the termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Evidence satisfies that standard if no serious or significant doubts exist about the correctness of conclusions of law drawn from the proof. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The children's best interests remain our primary concern. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

A month after that assault, the court adjudicated K.C. as a child in need of assistance (CINA). *See* Iowa Code § 232.2(6)(b), (c)(2), and (n) (2017). The adjudication order noted Emilee was pregnant, though she "wavered" when asked if Shawn was the father. Shawn went to jail for a probation violation in February 2018. And Emilee continued to lie to social workers about her ongoing relationship with Shawn during early 2018, according to the juvenile court findings.

L.C. was born in April 2018. A paternity test verified Shawn was L.C.'s father. Because of the parents' ongoing instability, the juvenile court adjudicated L.C. as a CINA when he was just one month old. In that adjudication order, the juvenile court set out clear expectations for the parents: both parents were to obtain suitable housing, complete a parenting class, and abide by the no-contact order. The court directed Emilee to participate in Catholic Charities programming as the DHS recommended.[2] Finally, the court ordered Shawn to complete mental-health and substance-abuse evaluations and participate in IDAP. The DHS placed L.C. and K.C. with the same foster parents in May 2018.

During the following summer and fall, the parents made little progress in meeting the court's expectations. Neither parent maintained suitable housing. Emilee completed a program for domestic-violence survivors called Journey Beyond Abuse—but she did so while maintaining she had no ongoing relationship with Shawn. Meanwhile, county records revealed Emilee and Shawn had regular telephone contact while Shawn was in jail. In October, a deputy stopped Emilee

---

[2] Emilee saw a nurse practitioner about medication management and attended therapy at Heartland Family Services from October 2017 through March 2018. But Emilee told her counselor she had ended her relationship with Shawn.

for driving with a suspended license and discovered Shawn in the car. Shawn lied about his name because of the no-contact order. Shawn again went to jail when the deputy determined his identity.

Like Shawn, Emilee ran into some criminal trouble. In early December 2018, police arrested her for burglary, criminal mischief, and assault after she tried to break out the window of Shawn's car and threw soda on his new girlfriend. Later that month, police charged her with animal neglect after finding a deceased dog and other malnourished pets at the farm where she was living.

In December 2018, the State petitioned to terminate both Emilee and Shawn's parental rights. In the wake of the petition, Emilee told her Family Safety, Risk, and Permanency (FSRP) worker she was "not ready to fight for her children." At a January 2019 hearing, Emilee consented to termination of her parental rights. In February, the FSRP set up a goodbye visit for Emilee and the children. But, when the judge realized he had a conflict and court administration reassigned the case, Emilee had a change of heart and contested termination.

Both Emilee and Shawn testified at the April 2019 termination hearing. Shawn admitted to committing acts of domestic violence against Emilee. Yet Shawn testified he had attended only one class of the IDAP. He noted it was a financial imposition to pay for the sessions. He explained he lost his job at Burger King because he failed a drug test. He understood the juvenile court ordered him not to use illegal substances. But Shawn persisted in using marijuana because "it just keeps [him] calm." Shawn said he was working with a therapist "where hopefully we're going to get on a sobriety track right now." Shawn did not have independent housing; instead he lived with a new girlfriend.

In the same style, Emilee acknowledged having been in "an abusive relationship" with Shawn. She testified she tried to hide their "on-again, off-again" partnership from the DHS because she "was scared to admit the truth" and "didn't want the kids to get taken away." Emilee recognized her dishonesty "just dug [her] a deeper hole." She described "an ongoing battle" with depression and the steps she had taken to regulate her medication. Emilee admitted previous marijuana use but said she stopped. She expressed a willingness to "redo" courses she took while lying about her relationship with Shawn. She estimated it would take about three months to save enough money to obtain housing for her and the children.

The juvenile court declined to postpone permanency for the children. In deciding to terminate parental rights, the court reasoned: "Both parents have been given ample opportunities to work toward reunification without success. The parties' deceptive and dishonest conduct in lying and hiding their relationship and avoiding confronting their serious issues has significantly hampered their progress and frustrated their ability to parent their children." The court terminated Shawn's parental rights under Iowa Code paragraphs 232.116(1)(b), (e), (h), and (*l*) (2019). The court terminated Emilee's rights under paragraphs 232.116(e), (h), and (*l*).

In her petition on appeal, Emilee challenges the three statutory bases for termination of her rights. When the juvenile court relies on more than one statutory alternative, we may affirm on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus our analysis on paragraph (h). Under that paragraph, the State must prove by clear and convincing evidence: (1) The children are three years of age or younger; (2) They have been adjudicated as CINA under section 232.96; (3) They have been removed from the physical

custody of their parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days; and (4) There is clear and convincing evidence that they cannot be returned to the custody of their parents as provided in section 232.102 at the present time. Iowa Code § 232.116(1)(h).

Emilee contests only the fourth element. Emilee rightly points out the insidious nature of domestic violence and the months or years it can take victims to "move past the abuser." She insists she now "is healthy and ready to be reunited with her children." We applaud Emilee for expressing insights into her abusive relationship at the April 2019 termination hearing. But she never adequately addressed her therapeutic and mental-health needs and showed continued instability in obtaining new criminal charges. She also realized she could not resume parenting "at the present time." *See A.M.*, 843 N.W.2d at 111 (interpreting statutory language "at the present time" as the time of the termination hearing). At the time of the April hearing, she did not yet have suitable housing to accommodate the children. She had not even communicated to the DHS worker she had changed her mind about consenting to termination. And she hadn't attended a visit with the children since the February "goodbye" meeting. We find clear and convincing evidence in the record that L.C. and K.C., as vulnerable young children, cannot presently be safely reunited with Emilee.

In his petition on appeal, Shawn concedes the State offered sufficient evidence of the statutory grounds. But he argues terminating his rights was not in the children's best interests. He also argues he "was not given adequate time and opportunity to reunify with K.C. and L.C." He grants he was incarcerated during

much of the CINA case, but he contends he is now "capable of providing positive parenting."

In the best-interests determination, we give primary consideration to the children's safety, the best placement for furthering their long-term nurturing and growth, as well as their physical, mental, and emotional condition and needs. *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Safety and the need for a permanent home mark the "defining elements in a child's best interest." *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially). In light of Shawn's history of domestic violence and substance abuse and his general lack of progress in the case goals, termination of his parental rights furthers the children's best interests.

Next, to grant an extension under Iowa Code section 232.104, the court must determine the need for removal will no longer exist at the end of that time. *In re A.A.G.*, 708 N.W.2d 85, 89 (Iowa Ct. App. 2005). We cannot make such a determination here. Shawn had more than a year to address the issues identified at the start of the CINA proceedings for K.C. The court first directed him to participate in the IDAP in the summer of 2017 and, by the spring of 2019, he had attended only one session of the twenty-four week program. We do not have faith that Shawn could provide a stable home for these young children at the end of a six-month extension. *See A.B.*, 815 N.W.2d at 778 ("[E]vidence of the parent's past performance . . . may be indicative of the quality of the future care that parent is capable of providing." (quoting *C.B.*, 611 N.W.2d at 495)).

Like the juvenile court, we find termination serves the best interests of these children so they can move toward a permanent placement.

**AFFIRMED ON BOTH APPEALS.**